UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT M. VanGEISON,

        Petitioner,

                                   Case No. 1:09-cv-579

v.

                                   Hon. Robert J. Jonker

SHIRLEE HARRY,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner, Robert M. VanGeison, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

        On January 23, 2004, following a jury trial, petitioner was convicted of one count of possession with intent to deliver between 225 and 650 grams of cocaine, M.C.L. § 333.7401(2)(a)(ii) and one count of possession of marijuana, M.C.L. § 333.7403(2)(d).  Trial Trans. III (docket no. 12); *People v. VanGeison (On Reconsideration)*, No. 254117, slip op. at 1 (Mich. App. July 13 2006). Petitioner's convictions arose from the following facts:

        Defendant was a cocaine user and also sold various quantities to his friends. Defendant's primary supplier of drugs was arrested.  However, he maintained contact with an associate of his supplier.  The associate was arrested for violation of probation for his own drug use and offered to work as a police informant to avoid a prison term by engaging in a reverse sale with defendant.  The associate made arrangements to meet defendant in a parking lot to exchange ten ounces of cocaine for cash.  After the exchange, defendant was arrested.  Defendant cooperated with police by admitting his prior use and sale of cocaine.  However, at trial, defendant testified that he only intended on purchasing four or five ounces of cocaine, and the associate surprised him with a supply of ten ounces.  Trial counsel also disputed whether defendant was in possession of the drugs at the time of arrest during closing

arguments.  Although the jury was given instructions for lesser included offenses, defendant was convicted as charged.

*Id.*, slip op. at p. 1.

At sentencing, petitioner's counsel discussed the recent amendment of § 333.7401(2)(a)(ii) and sought to have him sentenced under the more favorable amended statute which became effective on March 1, 2003.  Sent. Trans. at pp. 9-16 (docket no. 13).   When petitioner committed the offense in January 2003, M.C.L. § 333.7401(2)(a)(ii) provided that a person who possessed with intent to deliver "an amount of 225 grams or more, but less than 650 grams, of any mixture containing [the prohibited substance], is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years."  By way of background, M.C.L. § 333.7401 was amended by 2002 PA 665 (effective March 1, 2003).     *VanGeison (On Reconsideration)*, No. 254117, slip op. at p. 1, fn. 1.   After the amendment, the crime of possession with intent to deliver 225 to 650 grams of cocaine no longer existed. Effective March 1, 2003, § 333.7401(2)(a)(ii) applied to "an amount of 450 grams, but less than 1,000 grams," with a violation "punishable by imprisonment for not more than 30 years," while § 333.7401(2)(a)(iii) applied to "an amount of 50 grams or more, but less than 450 grams," with a violation "punishable by imprisonment for not more than 20 years."  In addition, the new scheme eliminated the minimum sentence of 20 years.

The trial court concluded that while the sentencing guidelines as calculated by the state probation agent reflected a minimum sentence of 81 to 135 months, those guidelines did not apply. Sent. Trans. at pp. 16-19.  Rather, the statutory minimums applicable to petitioner would be those in effect prior to the March 1, 2003 amendments.  *Id.* at pp. 18-19.  In reaching this determination, the trial judge observed that "[i]n this case what I'm dealing with, though, is a Court

of Appeals' case which holds that if the crime were committed before March 1st, 2003, the statute in effect at that time is the sentencing statute and that has the minimum." *Id.* at p. 19. Given the quantity of cocaine involved, the statute provided a minimum sentence of 20 to 30 years. *Id.* at p. 20. Accordingly, the judge sentenced petitioner to the minimum sentence of 20 to 30 years in the custody of the Michigan Department of Corrections for possession with intent to deliver 225 grams or more but less than 650 grams of cocaine. *Id.* at p. 22. The judge also sentenced petitioner to a concurrent term of 33 days in the Muskegon County Jail, with credit for 33 days served prior sentencing. *Id.* at pp. 22-23.

Petitioner, through counsel, appealed his convictions, raising the following issues in the Michigan Court of Appeals:

> I.    Should [petitioner] be sentenced under M.C.L. § 333.7401(2)(A)(III), as amended March 1, 2003, in order to protect his constitutional right to equal protection under the law?
>
> II.   As an alternative to retroactive application of 7401, should [petitioner] be sentenced under the amended parole provisions of 791.234(11) in order to protect his constitutional right to equal protection under the law?
>
> III.  Even if the court declines to hold the amendment to M.C.L. § 333.7401 retroactive to [petitioner's] case, or hold that the amendment to M.C.L. § 791.234 entitles [petitioner] to early parole consideration, should the court remand the matter to the trial court for a resentencing under *People v. Michielutti*, 266 Mich. App. 223 (2005), for the trial court to decide whether to use the amendment to M.C.L. § 333.7401 as a substantial and compelling reason to deviate from the prior mandatory minimum sentence?

Petitioner's Brief on Appeal (docket no. 15).

Petitioner also filed a supplemental *pro se* appellate brief raising three additional issues:

3

IV.    Was there prosecutorial misconduct denying [petitioner] his constitutional right to a fair trial?

V.    Was the jury properly instructed as to the specific intent needed by [petitioner] to deliver the statutory minimum charged?

VI.    Was [petitioner] denied his constitutional right to effective assistance of counsel?

Petitioner's Supplemental Brief (docket no. 15).

The Court affirmed the conviction in an opinion entered April 18, 2006. *People v. VanGeison*, No. 254117 (April 18, 2006) (docket no. 15). Petitioner's counsel moved for reconsideration, pointing out a recent Michigan Supreme Court order which indicated that petitioner could be entitled to early parole eligibility. On reconsideration, the Michigan Court of Appeals vacated the April 18, 2006 opinion and affirmed petitioner's convictions in a new opinion issued on July 13, 2006. *VanGeison (On Reconsideration)*, No. 254117 (Order and Opinion July 13, 2006).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court raising the following issues:

I.    [Petitioner] was denied his constitutional right to a fair trial due to prosecutorial misconduct.

    1) Suppression of evidence.
    2) Denigrating defense counsel.
    3) Prosecutor's conduct - comments

II.    The jury instructions were flawed. They did not instruct the jury as to proving [petitioner] needed the intent to deliver the statutory minimum charged.

III.    [Petitioner] was denied his constitutional right to effective assistance of counsel.

IV.    Sentencing issue. Was [petitioner] properly sentenced under the mandatory minimum laws in effect at the time of his sentencing?

4

V.      New Issue.  Entrapment.

Petitioner's Application for leave to Appeal (docket no. 16).

The Michigan Supreme Court denied petitioner's application for leave to appeal as

follows:

> On order of the Court, the application for leave to appeal the July 13, 2006
> judgment of the Court of Appeals is considered, and it is DENIED, because we are
> not persuaded that the questions presented should be reviewed by this Court.
> Defendant is entitled to early parole eligibility under MCL 791.234(13).  *See People
> v. Kelly*, 474 Mich 1026 (2006).

*People v. VanGeison*, No. 132015 (Mich.) (Order Feb. 2, 2007, as amended per order issued March

23, 2007).   The Michigan Supreme Court subsequently denied petitioner's motion for

reconsideration.  *Id.* (Order April 24, 2007).

Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*,

which the trial court denied in an opinion and order entered December 27, 2007.  *See People v.

VanGeison*, No. 03-48408-FH (Muskegon Co. Cir. Ct.) (Opinion and Order, Dec. 27, 2007) (docket

no. 17).  The Circuit Court identified four issues:

> I.      A request for a new trial based on newly-discovered evidence that the
> prosecutor used, and failed to correct, false and perjured testimony.
>
> II.     Newly discovered evidence establishes that the police never obtained
> cocaine from the Michigan State Police in Lansing.
>
> III.    Appellate counsel was ineffective for failure to investigate known
> issues of perjured testimony.
>
> IV.     Newly discovered evidence that the prosecutor used false and
> perjured testimony.

*Id.* at pp. 1-2.

In denying this motion the trial judge summarized petitioner's claim as follows:

> However defendant may phrase the legal issues, the thrust of his arguments is based upon his assertion that the police committed perjury when they testified as to how they go the ten ounces of cocaine used in this "reverse sting" operation from the Lansing State Police crime lab.

Opinion and Order (Dec. 27, 2007) at p. 2 (docket no. 18).  The trial judge denied petitioner's motion for relief from judgment on the merits.  *Id.* at pp. 1-6.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals raising five issues:

I.  Was [petitioner] denied his state and federal due process rights where his convictions were obtained through the knowing use of false and perjured testimony by the officer in charge, and where the prosecution failed to correct this false and perjured testimony?

I.A.  Was [petitioner] denied his due process where the officer in charge knowingly perjured himself at [petitioner's] trial, or testified falsely and the prosecutor failed to correct it?

I.B.  Is [petitioner] entitled to a new trial on the basis of this newly discovered evidence that no records exist of Det. Davis obtaining cocaine from the East Lansing C.I.D.?

II.  Was [petitioner] denied his state and federal due process rights where his convictions were obtained through the knowing use of false evidence, and where the prosecution failed to notify the court or the [petitioner]?

III.  Was [petitioner] denied his state and federal constitutional right to effective assistance of counsel where counsel failed to investigate known issues of false and perjured testimony by the officer in charge, and where the prosecution failed to notify the court or [petitioner] of this false and perjured testimony?

Delayed application for leave to appeal (docket no. 17).

The Michigan Court of Appeals denied the delayed application for leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. VanGeison*, No. 285983 (Mich. App. Sept. 8, 2008) (docket no. 17).

Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising four grounds:

I.      [Petitioner] was denied his state and federal due process rights where his convictions were obtained through the knowing use of false and perjured testimony by the officer in charge, and where the prosecution failed to correct this false and perjured testimony. Proof of this false and perjured testimony was not available at the time of trial and [petitioner] must be granted a new trial on the basis of this newly discovered evidence.

II.     [Petitioner] was denied his state and federal due process rights where his convictions were obtained through the knowing use of false evidence, and where the prosecution failed to notify the court or [petitioner]. Proof of this false evidence was not available at the time of trial and [petitioner] must be granted a new trial on the basis of this newly discovered evidence.

III.    [Petitioner] was denied his state and federal constitutional right to effective assistance of counsel, where counsel failed to investigate known issues of false and perjured testimony by the officer in charge, and where the prosecution failed to notify the court or [petitioner] of this false and perjured testimony.

IV.     [Petitioner] is entitled to relief from judgment where there is good cause for not raising the issues previously. The issues involve the denial of constitutional rights, [petitioner] was prejudiced, and manifest injustice has resulted.

Application for leave to appeal (docket no. 18).

VanGeison subsequently filed the present habeas petition raising five issues:

I.      The prosecutor knowingly presented false and perjured testimony and failed to notify the Court or [petitioner] of this false and perjured testimony.

        The lead officer testified he called another officer after the 5:52 p.m. call to [petitioner], sent him to Lansing to obtain the cocaine (a round trip of over 220 miles), that they weighed and bagged the cocaine from Lansing into 28 separate ounces, found a Burger King bag in a dumpster, then drove across town meeting the informant at 8:00 p.m. The prosecutor knew, or should have known,

7

it is not possible to do all of that in about 2 hours on a "nasty -- very cold" January winter night.

II.    Improper sentence.

This sentence was unconstitutionally excessive, unnecessary, and a pointless infliction of suffering. New laws had already been enacted before [petitioner] even committed this offence, and they became effective just a few weeks after [petitioner's] arrest but almost a year before [petitioner] was convicted and sentenced. To provide Equal Protection, [petitioner] should have been sentenced as other similarly situated defendants whom received far less severe sentences under the amended laws.

III.   The prosecutor's knowing use of false evidence.

The lead officer in this case testified he did not have cocaine in Muskegon to use for this sting operation. It is not possible to drive 220 miles round trip on a "nasty -- very cold" winter night, weigh and bag 28 separate ounces and then drive across town between the hours of 5:52 p.m. and 8:00 p.m. Since there was no cocaine to use in Muskegon and not enough time to obtain it from Lansing, it can only mean the prosecution falsified the evidence presented to this jury.

IV.    Ineffective assistance of trial counsel.

Counsel failed to do proper pre-trial investigation, failed to seek discovery of the crime lab reports and evidence logs from where the cocaine was obtained from, failed to challenge knowingly false testimony and evidence, failed to challenge the excess cocaine never possessed by [petitioner] but shown to the jury, failed to call and question key material witnesses, failed to challenge the chain of custody of the cocaine from the crime lab in Lansing to trial, etc., etc.

V.     Ineffective assistance of appellate counsel.

Issues of perjured testimony, false evidence, and prosecutorial misconduct were brought to appellate counsel's attention during the initial interview. Counsel even acknowledged the perjury and misconduct, but he refused to investigate, or raise, these issues for [petitioner's] appeal. Without even a minimal amount of investigation of how this may have affected the trial or conviction, it

8

could not be a sound or strategic decision of how to proceed with [petitioner's] appeal.

VI.    Prosecutorial misconduct.

The prosecution in this case withheld exculpatory evidence from the defense, denigrated defense counsel, made false statements to the jury, knowingly presented perjured testimony and false evidence to the court and jury, and failed to inform the court or the defense of this misconduct.

Petition (docket no. 1).

## II.    Procedural default (Issues I, III and VI)

## A.    Plain error review (Issue VI)

Respondent contends that petitioner's claim of prosecutorial misconduct (Issues I, III and VI) are barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine**.** Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a

9

procedural rule, but the state court mus also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Respondent contends that these three issues are subject to procedural default because the Michigan Court of Appeals performed only a "plain error" review of these issues. As an initial matter, the Michigan Court of Appeals did not address Issues I and III; these two issues were raised after the appeal in petitioner's motion for relief from judgment. *See* discussion, § II.B., *infra.* Issue VI was subject to plain error review due to petitioner's failure to object and preserve three issues for appellate review (i.e., petitioner's claims that the prosecutor failed to provide discovery, denigrated defense counsel and improperly commented on the evidence. *VanGeison (On Reconsideration)*, No. 254117, slip op. at pp. 2-3. Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default of Issue VI for purposes of federal habeas review. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save petitioner from the procedural default of this issue. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id. See also, Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).

### B. Trial court's review (Issues I and III)

Petitioner first raised Issues I and III in his post-conviction motion for relief from judgment brought pursuant to MCR 6.500 *et seq*. The trial court addressed the issues on the merits. Opinion and Order at pp. 1-6 (Dec. 27, 2007). Both the Michigan Court of Appeals and the

Michigan Supreme Court denied applications for leave to appeal, because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  The Sixth Circuit has previously held that MCR 6.508(D) is a valid procedural bar for habeas purposes.  *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).  However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) - i.e., the type of orders entered by the Michigan Court of Appeals and the Michigan Supreme Court in this case - "are not explained orders invoking a procedural bar."  In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits."  *Guilmette*, 624 F.3d at 291.  "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained."  *Id.*  Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.  Here, the last reasoned state opinion was the trial court's order denying the motion for relief from judgment entered on August 14, 2008.  In that order, the trial court addressed the merits of Issues I and III.  Accordingly, petitioner's Issues I and III are not subject to the procedural default doctrine.

## C.    Cause and Prejudice as to Issue VI

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Here, petitioner has failed to assert cause to excuse the procedural default of Issues VI.  While petitioner asserts that the alleged perjured testimony delayed him raising the prosecutorial misconduct issues until he filed his motion for relief from judgment, this rationale for cause does not apply to those issues which he raised in his direct appeal to the Michigan Court of Appeals.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("in order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.   Petitioner offers no such new evidence that he is

12

actually innocent of the crimes for which he was convicted.  Accordingly, petitioner has failed to meet the fundamental miscarriage of justice exception.  Having failed to meet the exception under *Coleman*, petitioner's Issue VI is procedurally barred and not subject to habeas review.

### III.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

### A. Prosecutorial misconduct (Issues I and III)

#### 1. Standard of review

14

Before habeas corpus relief becomes available for prosecutorial misconduct, such misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). Here, petitioner contends that the prosecutor engaged in prosecutorial misconduct by allowing the introduction of perjured testimony. "[I]n order to establish a claim of prosecutorial misconduct . . . [based upon perjured testimony], the defendant must show that the statement in question was false, that the prosecution knew it was false, and that it was material." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). The defendant must show that the statement in question was indisputably false rather than merely misleading. *Id.* With respect to materiality, because the use of perjured testimony is fundamentally unfair, a conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.*, *quoting Kyles v. Whitley*, 514 U.S. 419, 433 at fn. 7 (1995).

### 2.   The testimony regarding the procurement of cocaine for the informant (Issues I and III)

The trial judge addressed petitioner's regarding the alleged use of perjured testimony in the opinion and order denying petitioner's motion for relief from judgment:

> Defendant now files the instant "Motion for Relief from Judgement" pursuant to MCR 6.500 et seq. Defendant raises the following issues: (1) A request for a new trial based on newly-discovered evidence that the prosecutor used, and failed to correct, false and perjured testimony; (2) newly-discovered evidence establishes that the police never obtained cocaine from the Michigan State Police in Lansing; appellate counsel was ineffective for failure to investigate known issues of perjured testimony for failure to investigate known issues of perjured testimony; and (4) newly discovered evidence that the prosecutor used false and perjured testimony.

> However defendant may phrase the legal issues, the thrust of his arguments is based upon his assertion that the police committed perjury when they testified as to how they got the ten ounces of cocaine used in the "reverse sting" operation from

15

the Lansing State Police crime lab. The record indicates that a phone call was made to defendant at 5:52 p.m. to arrange his purchase of 10 ounces of cocaine from a police informant; that thereafter a police officer left Muskegon "in a scramble" to go to the Lansing State Police crime lab to get the cocaine and bring it back to Muskegon; that the informant was strip searched at 8:00 p.m.; and that the officers, and the informant with the cocaine, left for the Plumb's store delivery site at 8:15 p.m., arriving at the store at approximately 8:45 p.m. Giving the most generous estimate of time to the police recall of events, the police would have had two hours and twenty-three minutes to go from Muskegon to Lansing, pick up the cocaine, return to Muskegon, and package the cocaine. Defendant argues that this is a physical impossibility and constitutes evidence of perjury. The court disagrees. This court cannot state as a matter of absolute certainty that a police officer who knows he has to "scramble", and who is driving a high-powered police vehicle on police business, and is thus disregarding speed limits, could not have made the round trip in this time. Neither trial counsel nor appellate counsel saw this time period as improbable, as neither counsel for the defense ever made this an issue before the jury or the appellate courts. Even if this time period were construed as being impossible, such an impossibility could be the result of an honest mistake, rather than perjury. Regardless, there is no reasonable likelihood that false or mistaken testimony on this point could have affected the judgment of the jury in light of the other overwhelming evidence of defendant's guilt.

Opinion and Order at pp. 1-3.

In this regard, Muskegon Police Department Detective Thomas Parker testified: that he had approval to set up a reverse drug deal with the participation of Roman Wiggins; that during the afternoon of January 9, 2003, Parker received approval to set up the deal; that Parker contacted Wiggins around 4:30 p.m. ("probably an hour or so" before Parker met Wiggins at 5:30 p.m.); that Parker definitely knew the deal was going to take place after a telephone call involving petitioner at about 5:52 p.m.; that Parker sent Detective Davis to Lansing to pick up the "reverse inventory dope"; that Parker had to cut up the dope; and that he did not have a lot of time to do that before the planned 9:00 p.m. delivery time; that they strip searched Wiggins at about 8:00 p.m.; and that they arrived at the delivery site (Plumb's) at about 8:45 p.m. Trial Trans. I at pp. 246-50; Trial Trans. II at pp. 30, 45. Detective Davis' involvement in transporting the cocaine to be used for the operation was not developed by either the prosecutor or defense counsel at trial. Given this record,

16

which did not include testimony from Detective Davis, it is unclear exactly when or where Davis picked up the cocaine, whether someone assisted him or how fast he drove. Discussion of these questions - which did not appear particularly important to either party at the trial - is open to speculation by all parties. Based on this record, there is no evidence upon which the court can conclude that Detective Parker's statements regarding the procurement of the cocaine for the operation were "indisputably false" or that the prosecution knew the statements were false. *See Byrd*, 209 F.3d at 517.

Furthermore, petitioner has not established that there was any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Id.* Notwithstanding the government's evidence regarding the operation, petitioner made numerous incriminating admissions while testifying in his own defense at trial. For example, petitioner testified: that he had discussions and meetings with Roman Wiggins in 2002 and 2003; that he had an ongoing relationship with Wiggins, in which the latter brought him cocaine (e.g., 4 ounces in late October 2002 and 7 ounces a week later); that around December 2002, petitioner gave Wiggins 2 ounces of cocaine so the latter could raise money; that petitioner had discussions with Wiggins in January 2003 regarding purchasing up to a kilo of cocaine; that petitioner agreed to purchase 4 ounces of cocaine from Wiggins; and that petitioner met with Wiggins on January 9, 2003 to consummate the transaction, at which time Wiggins told petitioner he had "10 Whoppers," which petitioner knew was a reference to cocaine. Trial Trans. II at pp. 102; 106-24. On cross-examination, petitioner estimated that he spent about $25,000 a year on cocaine and admitted that Wiggins left 10 ounces of cocaine in petitioner's car after their January 9th meeting. *Id.* at pp. 131-40. In summary, petitioner has failed to demonstrate prosecutorial misconduct with respect to the alleged perjured testimony.

17

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner's claim for relief on Issues I and III should be denied.

### B.    Improper sentence (Issue II)

Petitioner contends that his sentence was unconstitutionally excessive, unnecessary, and a pointless infliction of suffering. Petitioner contends that he should have been sentenced under the amended version of § 333.7401. Petitioner also contends that the equal protection clause required that he be sentenced like other similarly situated defendants whom received far less severe sentences under the amended laws.

The Michigan Court of Appeals addressed this issue as follows:

> Defendant first alleges that the amended sentencing provisions of MCL 333.7401(2)(a)(iii) should be applied retroactively. Statutory amendments are presumed to operate prospectively unless the Legislature clearly manifests the intent to the contrary. *People v. Thomas*, 260 Mich.App 450, 458-459; 678 NW2d 631 (2004). This Court has rejected the contention that the amended statute, MCL 333.7401, can be applied retroactively because the plain language does not contain any such legislative intent. *People v. Doxey*, 263 Mich.App 115, 121-122; 687 NW2d 360 (2004); *Thomas*, *supra*. In *Thomas*, this Court also noted that even if the amendments to MCL 333.7401 were given only prospective application, MCL 791.234 provided relief to a convicted defendant because it set forth parole eligibility prior to the completion of the minimum term.

*VanGeison (On Reconsideration)*, No. 254117, slip op. at pp. 1-2.[1]

---

[1] While the Michigan Court of Appeals also addressed a parole issue under M.C.L. § 791.234, neither petitioner nor respondent have addressed the effect of this parole statute in any detail. In this regard, the Michigan Court of Appeals noted that petitioner's claim under the parole statute did not provide a basis for challenging his sentence:

> Defendant also alleged that, as an alternative to retroactive application, he should be "sentenced under the amended parole provisions of [MCL] 791.234(11). . . ." However, MCL 791.234 is not a sentencing provision, but merely a parole eligibility provision. Accordingly, this claim of error does not entitle defendant to appellate relief.

In the recent decision of *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012), the Sixth Circuit rejected similar claims that the amendments to M.C.L. § 333.7401 should be applied retroactively or that the amended version of the statute violated the equal protection rights of criminals convicted under the harsher pre-amendment version of the statute:

> *Sentencing Claims*. Rashad raises two challenges to his life sentence [pursuant to the pre-amended version of M.C.L. § 333.7401(2)(a)(ii)]. He first argues that the trial court should have resentenced him under Michigan's amended drug laws (which carry no mandatory minimum) rather than the law that was in force at the time of his offense and conviction (which carried a mandatory minimum of life in prison). The Michigan Court of Appeals has held that Michigan's amended sentencing laws do not apply retroactively, which is to say they do not apply to defendants who were convicted before the amendment. *See, e.g.*, *People v. Doxey*, 263 Mich.App. 115, 687 N.W.2d 360, 365 (2004). Rashad does not cite any precedent from the United States Supreme Court requiring the retroactive application of state sentencing laws. Nor are we aware of any such authority. To the contrary, courts generally presume that "legislation, especially of the criminal sort, is not to be applied retroactively" unless the legislature clearly requires otherwise. *Johnson v. United States*, 529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). Federal law does not entitle Rashad to retroactive application of Michigan's amended sentencing laws.
>
> Rashad also claims that the disparity between the sentence he received under Michigan's old sentencing regime and the sentence an offender would receive under the new regime violates equal protection and due process. But the federal Constitution does not require "that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. 235, 243, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). Rashad persists that he received a harsher sentence for mere possession under the old regime than what someone convicted of possession with intent to deliver would receive under the new regime. But Michigan's new drug laws, like its old ones, do not establish that possession of a large amount of cocaine is a less serious offense than possession with intent to deliver a large amount of cocaine. Defendants whose offenses involve more than 450 grams of cocaine face the same sentencing range under either statute. Compare Mich. Comp. Laws § 333.7401(2)(a)(ii) (possession with intent to deliver), with *id.* § 333.7403(2)(a)(ii) (possession). That Rashad, as an earlier offender, received a higher sentence than later offenders does not violate the Federal Constitution. *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 504 (6th Cir.2007). . .

---

*VanGeison* (On Reconsideration), No. 254117, slip op. at pp. 1-2.

*Rashad*, 675 F.3d at 570-71.

The Sixth Circuit's decision in *Rashad* rejected claims which were nearly identical to those raised by petitioner, i.e., that the amended version of § 333.7401 was retroactive and that application of the pre-amended version of § 333.7401 violated the equal protection clause. Accordingly, *Rashad* is binding authority on these issues.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner's claim for relief on Issue II should be denied.

### C.    Ineffective assistance of trial counsel (Issue IV)

Petitioner contends that he was denied ineffective assistance of trial counsel. Petitioner identified the following incidents of alleged ineffective assistance: counsel failed to file a motion to suppress an audio (tape) portion of the reverse sting operation, which contained gaps; counsel failed to obtain a copy of the Michigan State Police Forensic Lab reports related to the police picking up cocaine from the lab; counsel waived the right to challenge the chain of custody of the cocaine from the Michigan State Police in Lansing to Grand Rapids; counsel did not object to the presentation of evidence to the jury of "cocaine that was never used in the reverse sting"; counsel failed to object to jury instructions regarding the specific intent needed to deliver the statutory minimum amount of cocaine as charged; and counsel made no attempt to introduce evidence to depart downward from the mandatory minimum 20 year sentence. Petitioner's Brief (docket no. 1-4 at pp. 55-57).

The Michigan Court of Appeals addressed these claims, which were raised in petitioner's supplemental *pro se* brief, as follows:

Lastly, defendant alleges that he was denied the right to effective assistance of counsel. We disagree. Effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v. Effinger*, 212 Mich. App 67, 69; 536 NW2d 809 (1995). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Knapp*, *supra* at 385-386. To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Id.* Decisions regarding the evidence to be presented and whether to call or question witnesses are presumed to be matters of trial strategy. *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999). We do not substitute our judgment for that of trial counsel when addressing issues of trial strategy, and we do not view counsel's competence with the benefit of hindsight. *Id.* at 76-77. When record evidence of ineffective assistance of counsel is not present, our review is limited to mistakes apparent on the record. *Id.* Applying these rules, the representation by defense counsel was reasonable under prevailing professional norms. [FN6]

> [FN6. Defendant raises various questions about the admissibility of an audiotape with omissions in the tape, and that defense counsel should have moved to suppress the tape. Because we do not have the audiotape, we do not have record evidence to make any such assessment. Additionally, the failure to challenge the tape may have been deliberate trial strategy because of its quality.]

*Vangeison (On Reconsideration)*, No. 254117, slip op. at pp. 3-4.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from

the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

As an initial matter, the Michigan Court of Appeals could not evaluate petitioner's claim regarding the suppression of the audio tape, because it was not presented with a copy of the tape. With the exception of this suppression issue, petitioner presents only bald and conclusory allegations of ineffective assistance of counsel. Unsupported allegations of ineffective assistance of counsel fail to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. *See Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000); *United States v. DiTommaso*, 817 F.2d 201, 215 (2nd Cir. 1987); *Campbell v. Greene*, 440 F. Supp.2d 125, 149 (N.D.N.Y. 2006).

## D. Ineffective assistance of appellate counsel (Issue V)

Petitioner claimed that appellate counsel was ineffective for failing to investigate known issues of perjured testimony. Opinion and Order at pp. 1-2 (Dec. 27, 2007). The trial court addressed petitioner's claim of ineffective assistance of appellate counsel as follows:

> The court also finds that defendant was not denied ineffective assistance of appellate counsel. In *People v. Reed*, 449 Mich. 375, 391 (1995), the court held that "appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." Defendant's Exhibit #6, a letter from his appellate counsel dated April 24, 2006, reveals that this was in fact the permissible strategy employed by appellate counsel.

*Id.* at p. 6.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983).

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981).

When evaluating the issue of ineffective assistance of appellate counsel, prejudice is shown if there is a reasonable probability that, but for his counsel's failings, the defendant would have prevailed on his appeal. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009), citing *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir.2004). A "reasonable probability" is a probability sufficient to undermine the court's confidence in the outcome. *Id.* at 564-65. To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). Thus, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Here, the trial judge noted that petitioner's appellate counsel was not ineffective, but engaged in winnowing out weaker arguments as evidenced by counsel's letter of April 24, 2006. While the April 24, 2006 letter does not appear in the transcripts (docket nos. 17 and 18) or petitioner's initial 258-page filing (docket no. 1), the record does include a letter from the State

23

Appellate Defender's Office dated May 22, 2006, in which the assistant defender Van Hoek stated

his reasoning for not addressing petitioner's claim of perjury:

> . . . I must reiterate the basic reasons for my conclusions that even if we could show that the Police and Wiggins lied about their past relationships, or that they lied about where they got the alleged cocaine in your case, that evidence would not overcome the most basic facts of the case: 1) you were observed by several police officers engaging in the transaction with Wiggins; 2) you were arrested at the scene, in possession of the bag containing the cocaine; 3) you waived your Miranda rights and made a very incriminating statement to the police shortly after your arrest; and 4) your trial testimony was essentially a confession to agreeing to purchase at least four ounces of cocaine initially, and then agreeing to take the other six when offered to you by Wiggins. I am not saying this because I personally know all this to be true, as obviously I was not there. I am saying this because this is what the trial record shows, and that is what the appellate courts consider.

Van Hoek letter (May 22, 2006) (docket no. 18).

> Mr. Van Hoek further stated:

> . . . Even if the officers lied about the timing, or where the drugs came from, that would not convince any appellate judge that they should ignore your own admissions and reverse the convictions.

> Your comments that I am ignoring the commission of perjury is off base. What I am doing, as I do in every case, is evaluating whether any particular issue has an arguable chance of winning in the appeal. I do not have the time, nor is it a wise appellate strategy, to run [sic] issues that have no arguable chance of success. Please understand that there is perjury committed in many trials -- sometimes by the police, sometimes by the witnesses, sometimes by the defendants. Recognizing that even if you can demonstrate perjury but it would likely to be found harmless error is not the same as endorsing the perjury. In a different situation, one where the credibility of these particular officers was a crucial issue in the trial, showing that they lied about the timing might have been important. In your trial, however, that was not the case. I can't just ignore on appeal your own testimony and the other facts of the case. I have enough experience in handling appeals, and knowing how the courts decide cases, to have reached a conclusion in your case that this issue would not have made any difference.

*Id.*[2]

Appellate counsel's letter demonstrates the type of evaluation which appellate

attorneys should perform on each case. Given the record of this case, which included petitioner's

incriminating admissions at trial, petitioner's appellate counsel was not deficient for considering,

---

[2] The court notes that the transcript contains only two pages of this letter, which was attached by petitioner as Appendix G to his application for leave to appeal to the Michigan Supreme Court (docket no. 18).

and then rejecting, the alleged claims of perjury.  Furthermore, as discussed, *supra*, petitioner's appellate counsel successfully persuaded the Michigan Court of Appeals to reconsider the April 18, 2006 opinion and vacate that opinion.  Although counsel was ultimately unsuccessful in reversing the conviction or reducing petitioner's sentence, his performance cannot be construed as deficient.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner's claim for relief on Issue V should be denied.

### V.    Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  August 20, 2012                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).